In the Matter of the Application for the Removal of JOSEPH M. DEUEL from the Office of Justice of the Court of Special Sessions of the City of New York for the First Division.

First Department, July 8, 1908.

**Court — judge of Special Sessions, city of New York — carrying on business in violation of charter.**

To bring a justice of the court of Special Sessions of the city of New York within the prohibition of section 1416 of the city charter forbidding such justice to carry on any business, he must have such relation to the business as to impose upon him an obligation of responsibility to it — a responsibility for its management, an assumption of its control or an obligation to perform duties in relation to it.

Such justice by becoming the vice-president of a publishing corporation, but not charged with specific duties in relation to it, or actively engaged in the conduct of the business, or not responsible to the corporation or its stockholders for the conduct or management of the business and not actively interfering in any way in relation to it, is not guilty of a violation of the said section so as to justify his removal.

*Howard S. Gans,* for the petitioners.

*Martin W. Littleton, Charles L. Craig* and *Frederick Allis,* for the respondent.

INGRAHAM, J.:

Charges against the respondent were submitted to this court upon the petition of William Travers Jerome, James W. Osborne and Edward M. Shepard, attorneys and counselors at law, one of the petitioners being the district attorney of New York county and the other petitioners being counsel for the defendant in a criminal action brought in the Supreme Court, in which the respondent appeared as a witness, and the charges were based upon the testimony of the respondent in that action. The petition alleged that the respondent is a justice of the Court of Special Sessions of the city of New York for the first division, having been appointed on or about January 1, 1904, and as such justice was forbidden by law to carry on any business; that the respondent was, from the 1st of July, 1895, to the 1st of January, 1904, a city magistrate of the city of New York for the first division; and as such city magistrate was forbidden by law from carrying on any business.* The petitioners then charge that the respondent, since the 1st of January, 1905, has been carrying on and from time to time has carried on business, and has been engaged in and carrying on various businesses and business enterprises, among others the following, to wit, the business of owning, managing, editing, printing, canvassing for and selling certain printed publications known as *Town, Topics, The Smart Set* and *Fads and Fancies*, and the business of owning, managing, directing and controlling certain corporations known as the Town Topics Publishing Company, The Ess Ess Publishing Company, The Smart Set Publishing Company and the Printers' and Publishers' Realty Company. It is further alleged that the Town Topics Publishing Company was engaged in the publication and sale of a certain weekly paper known as *Town Topics*, wherein there was repeatedly and continuously published and printed abusive, salacious, scurrilous, scandalous and libelous matter as the said respondent well knew; that it was a part of the business carried on by the respondent, and one of the functions performed by him in carrying on the said business of publishing, editing and managing the said *Town Topics*, and managing and controlling the said Town

---

* See Laws of 1895, chap. 601, § 25, as amd. by Laws of 1897, chap. 382; re-enacted in Laws of 1901, chap. 466, §§ 1401, 1416.—[REP.

Topics Publishing Company, to read the said abusive, salacious, scurrilous, scandalous and libelous matter so published as aforesaid, and to read the same proposed to be published in the said publication, and so to edit, phrase and modify the matter so proposed to be published as to decrease the risk and dangers of civil or criminal liability which the authors thereof and the said corporation were incurring or might incur by reason of the publication of such matter. It was further alleged that it was a part of the business carried on by the said corporation and by divers persons associated therewith to solicit, urge, coerce and compel the payment of large sums of money to them, or to the said companies, or to persons associated therewith, by means of overt or covert threats; and that it was the custom in the conduct of the business of the said publishing company to cause to be published of persons thus refusing to pay matter that was derogatory, and to publish matter in praise or favorable comment upon persons thus paying, all of which the respondent at all of the times mentioned either knew or should have known, and by the exercise of due care and diligence could have known.

The gravamen of this charge seems to be that the respondent was carrying on during the period for which he had been a justice of the Court of Special Sessions, a business in violation of section 1416 of the charter of the city of New York (Laws of 1901, chap. 466). The relator was charged with owning, managing, editing, printing, canvassing for and selling certain printed publications known as *Town Topics*, *The Smart Set* and *Fads and Fancies*, and the business of owning, managing, directing and controlling certain corporations specified.

These charges having been served upon the respondent, he submitted an answer. The evidence in relation thereto was taken before a referee, and the question was then presented to the court for such action as was required.

Section 17 of article 6 of the Constitution provides that "Justices of the peace and judges or justices of inferior courts not of record, and their clerks, may be removed for cause, after due notice and an opportunity of being heard, by such courts as are or may be prescribed by law." Section 28 of chapter 601 of the Laws of 1895 provides that "The justices of the Court of Special Sessions and the

clerk of said court appointed pursuant to this act may be removed for cause after due notice and an opportunity of being heard * * * by the Appellate Division of the Supreme Court in the first department."

Upon an application of this character the court is required to investigate charges made against a judicial officer. In neither the Constitution nor the statute is the ground for removal specified; but the court can act upon no charges unless the respondent has had notice thereof and an opportunity to be heard. We are confined, therefore, in determining this question to an investigation of the charges preferred against the respondent and to determine whether those charges, if proved, are a sufficient cause for his removal. Section 25 of chapter 601 of the Laws of 1895 (as amd. by Laws of 1897, chap. 382), re-enacted as section 1416 of the charter of the city of New York, provides, in the words of the charter, that "No person shall be appointed to the office of justice of the Court of Special Sessions in The City of New York, unless he shall be a resident of the said city and of the division of the city for which he shall be appointed; nor unless he shall have been admitted to practice as an attorney and counselor at law in the courts of this State at least ten years prior to the date of such appointment. No such justice shall receive to his own use any fees or perquisites of office; nor shall any such justice hold any other public office, or carry on any business, or practice as an attorney or counselor at law in any court in this State, or act as referee or receiver; but each such justice shall devote his whole time and capacity, so far as the public interests demand, to the duties of his office."

I have no doubt but that a persistent and intentional violation of the prohibition contained in this statute would be a sufficient cause for removal. The object of this statute is not only to insure the prompt and efficient discharge of the duties of a justice of the Court of Special Sessions, but also to prevent a justice of the court from making such connections and having such relations with others as would justify a question as to the impartial and proper performance of his judicial duties. The justice is required to be an attorney of ten years' standing, and upon his acceptance of the office he is required to relinquish the practice of the law and is prohibited from acting as referee or receiver. He can hold no other public office,

First Department, July, 1908. [Vol. 127.

can carry on no business, but is required to devote his whole time and capacity to the duties of his office. In the Standard Dictionary " To carry on " is defined: " To keep up; keep going; maintain; manage; " and in the Century Dictionary, " To manage or be engaged in; continue to prosecute; keep in progress," and I think, to bring a person within the prohibition against carrying on a business, there must be such a relation to the business as imposes upon the person charged an obligation or responsibility to it, a responsibility for its management, the assumption of its control or an obligation to perform duties in relation to it. The term " to carry on a business " implies such a relation to the business as identifies the person with it and imposes upon him some duty or responsibility in connection with its management. It is much easier to illustrate the distinction by concrete instances than by a general definition. I assume that it would not be a violation of this statute for a justice of the court to accept a position as executor or trustee of an estate, although that estate was connected with a going business, so long as the executor or trustee was not the active manager of such a business. A trustee or executor could settle the estate, could invest the trust property and collect the income and perform such incidental duties in relation to the estate without it being said that he was engaged in carrying on business, although he would be entitled to his fees for the performance of such duties. So, it seems to me that a person could be a director or officer of a corporation so long as the duties of his office did not impose upon him the duty to manage the corporation of which he was an officer. In other words, he could be an executor, trustee, director or officer without carrying on business; but in either one of these positions the duties which he was required to perform by accepting the office might be such as would require him to carry on a business and be charged with the management and control of it and to be so connected with it that he could be said to carry on the business. It seems to me that it would be a violation of this statute for one of the justices of the Court of Special Sessions to be a partner in any active business, although he could say that he did not devote thereto any of the time that the public interests required that he should devote to his office as such justice. It would be a violation of this statute for a justice of the Court of Special Sessions to

accept a position as an officer of a corporation engaged in an active business which required that he should take charge of or manage such business or exercise control over it. It would be a violation of his duty to accept an employment in connection with an active business which would require him to perform duties in relation to it; but on the other hand the mere acceptance of an office in a corporation which conducted a business, the duties of which office did not require him to assume any control over it or to direct its management, or to be responsible for the business that it conducted, would not be a violation of this provision.

It would serve no useful purpose to analyze this voluminous testimony and I shall attempt to do no more than to state the conclusion at which I have arrived. I do not find it proved that this relator accepted any office in this corporation that imposed upon him any active duties in relation to the corporation itself, or the business that it conducted. He was vice-president of the corporation, but charged with no specific duties in relation to it. There is no evidence that he actively engaged in the conduct of the business of the corporation; that he was responsible, either to the corporation or to its stockholders, for the conduct or management of the business, or that he actively interfered in any way in relation to it. In fact, the evidence is all the other way. Certainly if no one did anything more for this business than the respondent did, or was under obligation to do, the business would not have been carried on at all, and the conclusion that I have arrived at is that the charge of a violation of section 1416 of the charter is not sustained.

Counsel for the petitioners also insist that the respondent should be removed because no man is to be deemed fitted to fulfill the functions of a judicial officer who, while in office, deliberately and persistently engages in an enterprise that merits and invokes the contempt of all decent minded men; and this is based upon the fact that the publications with which the respondent has been connected are of such a disreputable character that they are a violation of both the civil and criminal law. I am doubtful as to whether these charges involved anything more than a charge of violating section 1416 of the charter as engaging in business in violation of the prohibition it contains. From the nature of the charges it would appear that the character of the business was simply stated in con-

nection with the charge of a violation of section 1416 of the charter. It is not necessary to examine the nature of these publications, or express an opinion as to their decency or respectability. If the respondent was directly connected with these publications and responsible for their contents, or for the acts of those engaged in the publications, it might well be that such conduct was inconsistent with the judicial character, and would be inconsistent with his continuing to occupy the position he does. But considering his relation to the corporation and its publication, and his explanation as to his connection with it which the referee appears to have credited, I do not think that we are justified in holding that the respondent's relation with this corporation or its publication was a sufficient cause to justify his removal from office.

My conclusion, therefore, is that the application should be denied and the proceeding dismissed.

McLaughlin, Laughlin, Clarke and Scott, JJ., concurred.

Application denied and proceeding dismissed. Settle order on notice.

---

Patrick J. Howley and P. J. Howley, Incorporated, Respondents, v. Charles Francis Press and Waverly Bindery, Appellants.

First Department, July 8, 1908.

#### Injunction — security — moving papers.

Security must be given on the issuance of an injunction, except by certain public officials and municipal corporations.

Where the papers upon which an injunction is asked fail to allege that the defendant is insolvent and unable to respond in damages or that the property held as security and threatened to be sold does not have an ascertainable value, no ground for injunctive relief is shown.

Appeal by the defendants, the Charles Francis Press and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of April, 1908, granting a motion for an injunction *pendente lite.*